# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| EVANSTON INSURANCE CO., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-04-0463 |
| | § | |
| ENCORE MEDICAL STAFFING, | § | |
| INC., *et al.*, | § | |
|     Defendants. | § | |

## MEMORANDUM AND ORDER

This insurance coverage case is before the Court on the Motion for Summary Judgment filed by Defendants Encore Medical Staffing, Inc. ("Encore"), William Powell II, Sylvia Moreno, and Adam Herrera and Third-Party Defendant Potter-Holden & Company ("Potter-Holden") ("Defendants' Motion") [Doc. # 71], the Motion for Summary Judgment filed by Plaintiff Evanston Insurance Company ("Evanston") [Doc. # 73], and the Motion for Summary Judgment filed by Certain Underwriters at Lloyds, London and National Fire and Marine Insurance Company (collectively "Lloyds") [Doc. # 75]. The motions have been fully briefed and are ripe for decision. Having considered the parties' submissions, all matters of record, and the applicable legal authorities, the Court concludes that Defendants' Motion should be **denied**, Evanston's motion should be **granted**, and Lloyds' motion should be **denied**.

I.      **FACTUAL BACKGROUND**

Encore provides physicians to hospitals, including Scenic Mountain Hospital ("Scenic Mountain"). Dr. Powell, an obstetrician under contract with Encore, was working at Scenic Mountain on September 11, 2002, when Sylvia Moreno arrived to deliver her baby. There were complications during the delivery, and the baby did not survive.

Encore and Powell were insured by Evanston under a "claims-made" professional liability insurance policy for the period October 23, 2001 to an extended date of November 22, 2002. Encore and Powell were later insured by Lloyds under a "claims-made" professional liability insurance policy effective for the period from November 25, 2002 to November 25, 2003, and then by a separate Lloyds policy for the period from November 25, 2003 to November 25, 2004.[1] The terms of the Evanston policy and the 2002-03 Lloyds policy will be discussed in more detail below.

On October 2, 2002, attorneys for Moreno sent a letter to Scenic Mountain stating that Moreno believed that her baby "suffered injuries while under the care of agents, servants, representatives and/or employees" of Scenic Mountain. *See* October 2, 2002 Letter, CUL00077. The letter, sent pursuant to Article 4590(i), Section 4.01(a)

---

[1]   National Fire and Marine Insurance Company is an insuring company only for the 2003-04 Lloyds policy.

of the Texas Revised Civil Statutes, gave notice to Scenic Mountain of Moreno's "intent to file a health care liability claim against Scenic Mountain Medical Center for injuries and damages suffered by [Moreno's baby] . . .." *Id.*, CUL00078. The letter was given to Powell, who forwarded the letter to Encore's insurance agent, Potter-Holden, with a cover letter describing it as a "potential claim." *See* Powell Letter dated November 5, 2002, Exh. B to Evanston's Motion for Summary Judgment. Potter-Holden inadvertently failed to forward the letter to Evanston until December 20, 2002.

On November 25, 2002, in connection with its application for the first Lloyds professional liability insurance policy, Encore disclosed its and Powell's potential liability in connection with Moreno's allegations. The policy, when issued on November 27, 2002, was made effective retroactively as of 12:01 a.m. on November 25, 2002.

On December 3, 2002, Moreno's attorneys sent a notice of intent to sue directly to Powell. This letter, which was virtually identical to the letter previously sent to Scenic Mountain, was forwarded to Potter-Holden on December 9, 2002.

Moreno later sued Encore and Powell and obtained a default judgment for approximately $3 million. Evanston filed this lawsuit seeking a declaratory judgment that its policy does not provide coverage for Encore or Powell in connection with the Moreno lawsuit and judgment. Powell filed a third-party complaint against Lloyds and

Potter-Holden. Evanston and Lloyds moved for summary judgment that there is no coverage under their policies. Defendants and Potter-Holden moved for summary judgment that there is coverage under the Evanston policy, the Lloyds policy, or both.

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir.), *cert. denied*, 537 U.S. 824 (2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In this case, the material facts are undisputed.

### B. Insurance Coverage

A liability insurance policy consists, generally, of three parts: (1) the insuring agreement, which is the affirmative grant of coverage that sets forth who and what are covered; (2) the exclusions, which limit the insuring agreement's coverage; and (3) the conditions, which set forth a procedural framework for how the parties will conduct their dealings in the event of a loss.

Under Texas law, the meaning of an insurance contract is to be determined under the standards applicable to contracts generally. *See Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000); *Cicciarella v. Amica Mutual Insurance Co.*, 66 F.3d 764, 767-68 (5th Cir. 1995); *Barnett v. Aetna Life Insurance Co.*, 723 S.W.2d 663, 665 (Tex. 1987). A court's primary concern is to give effect to the intention of the parties as expressed by the policy language. *Cicciarella*, 66 F.3d at 768; *Ideal Lease Service, Inc. v. Amoco Production Co.,* 662 S.W.2d 951, 953 (Tex. 1983). When the terms of an insurance policy are unambiguous, the court may not alter those terms. *American Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 329 (5th Cir. 2001); *Royal Indem. Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex. 1965).

"A contract is ambiguous only 'when its meaning is uncertain and doubtful or it is reasonably susceptible of more than one meaning.'" *Cicciarella*, 66 F.3d at 768 (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "The fact that the parties disagree as to coverage does not create an ambiguity." *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1261 (5th Cir. 1997); *Forbau v. Aetna Life Insurance Co.*, 876 S.W.2d 132, 134 (Tex. 1994). "The determination of whether terms are ambiguous is a question of law." *Cicciarella*, 66 F.3d at 768; *Yancey v. Floyd West & Co.,* 755 S.W.2d 914, 917 (Tex. App. – Fort Worth 1988, writ denied). "However, if the contract is subject to more than one reasonable interpretation, then the contract

is ambiguous and it will be interpreted in favor of coverage for the insured." *Lambrecht & Associates, Inc. v. State Farm Lloyds*, 119 S.W.3d 16, 20 (Tex. App. – Tyler 2003, no pet.) (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 458 (Tex. 1997)); *see also Certain Underwriters at Lloyd's London v. C.A. Turner Const. Co., Inc.*, 112 F.3d 184, 186 (5th Cir. 1997); *Texas Dept. of Housing & Community Affairs v. Verex Assurance, Inc.,* 68 F.3d 922, 928 (5th Cir. 1995); *National Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex. 1991); *accord Mid-Continent*, 206 F.3d at 491.

### III.  ANALYSIS

#### A.  Evanston's Policy

The Evanston policy identifies Encore as the "named insured" and an amendment provides that the insurance coverage extends to "independent contracted physicians solely with respects [*sic*] to their professional services rendered or that should have been rendered on behalf of Encore Medical Staffing, Inc." *See* Evanston Policy, Exh. F to Defendants' Motion. Consequently, Encore is an insured under the Evanston policy, and Powell is an insured under the policy to the extent he was providing professional services for Encore during the relevant time period.

The Evanston policy is a "claims-made" policy which provides coverage only for "claims" that are "first made" against the insured during the policy period. The

Evanston policy requires proper and timely notice as a condition precedent to coverage. For a claim, which is defined in the policy as "a demand received by the insured for money or services, including the service of suit or institution of arbitration proceedings against the insured," written notice must be provided to Evanston during the policy period or "within 60 days after the expiration of the policy." *Id.* If the insured has received only notice of "Malpractice or Personal Injury to which th[e] policy applies," however, the policy provides coverage only if the insured gives written notice during the policy period. *Id.* The sixty-day extension for notice applies only if the insured has received during the policy period a "claim" as defined in the policy.

In this case, the October 2, 2002 letter from Moreno's attorneys to Scenic Mountain and forwarded to Powell did not make a demand for monies or services from Encore or Powell.[2] Instead, the October 2, 2002 letter stated Moreno's belief that her baby suffered injuries while at Scenic Mountain and gave notice of Moreno's "intent to file a health care liability claim against Scenic Mountain" for those "injuries and damages." Although the letter mentioned "injuries and damages," the unambiguous

---

[2] The parties do not cite cases construing the term "written demand for money," and the Court's independent research of that term as used in insurance policies has not revealed any cases in which the term has been defined or construed. Although it did not specifically discuss the meaning of the phrase, a district court in Illinois recently noted that a "written demand for money" was made in a demand letter that "demanded the return of funds taken from [an] account, plus interest and attorneys' fees, and threatened the filing of a class action lawsuit." *See Executive Risk Indem., Inc. v. Chartered Benefit Services, Inc.*, 2005 WL 1838433 * 6 (N.D. Ill. July 29, 2005).

language in the letter did not make a present demand for money but, instead, provided notice of an intent to file a lawsuit *in the future*. As a result, the letter does not meet the definition of "claim" in the Evanston policy. Instead, at most it made Powell "aware of Malpractice or Personal Injury to which [the Evanston] policy applies" and there would be coverage under the Evanston policy if Evanston received written notice during the policy period.

It is undisputed that the Evanston policy period ended November 22, 2002. It is also undisputed that, although Powell forwarded the letter to Potter-Holden on November 5, 2002, Potter-Holden did not forward Powell's notice of the potential claim to Evanston until almost one month later and almost two weeks after the policy period ended. Consequently, there was not timely notice and there is no coverage under the unambiguous terms of the Evanston policy. Evanston is entitled to summary judgment that its policy does not provide coverage.

### B.     Lloyds' Policies

Coverage under the 2002-03 Lloyds policy is limited to "claims (a) first made against the Insured for medical professional services rendered or failed to be rendered subsequent to the retroactive date stated in the policy, and (b) reported to Underwriters in writing during the Policy Period or any applicable extended reporting period." *See* Lloyds Policy, Exh. A to Lloyds' Motion for Summary Judgment, CUL00003. The

insuring clause provides that Lloyds will pay certain damages "for which a claim is first made in writing during the policy period and reported to the Underwriter in writing during the policy period or any applicable Extended Reporting Period." *Id.* CUL 00005. Exclusion 12(ii) of the Lloyds policy excludes coverage for "a claim which was first brought to the attention of the Insured prior to the first date that the Named Insured had current, continuous coverage by the Underwriter." *Id.* CUL 00006.

For purposes of the Declarations page, the insuring clause, and Exclusion 12(ii), a "claim" is defined to include "written notice of intent to file a lawsuit . . . against the Insured . . . ."[3] *Id.*, Extended Claim Definition Endorsement, CUL 00019. Therefore, there is no "claim" as defined in the Lloyds policy under this provision until there has been "written notice" of intent to file a lawsuit. In this section of the policy definition of "claim," the term "written notice" is in bold lettering, indicating that it has "special meaning" as defined in the policy. *Id.* CUL 00003. "Written notice" is defined under the policy as "a notice in writing *delivered to the Underwriter* by a Named Insured or Additional Named Insured complying with [other policy requirements]."[4] *Id.* CUL

---

[3]   Lloyds notes, but presents no meaningful related argument, that its policy also defines "claim" to mean "a written demand for money or services delivered to an Insured." As discussed in connection with the Evanston policy, the October 2, 2002 letter did not make a present demand for money or services and no demand was made to Powell or Encore. Instead, the October 2 letter merely gave notice of an intent to file a lawsuit in the future.

[4]   The Policy provides that the written notice must contain sufficient information to identify the
(continued...)

00009 (emphasis added). Consequently, under the terms of the policy, there can be no "claim" until there is "a notice in writing delivered to the Underwriter."

In this case, Encore submitted on November 25, 2002, a supplement to its application for insurance coverage with Lloyds. In response to Lloyds' inquiry into "all claims for the group [Encore] and all medical professionals for the last five years," Encore listed the Moreno delivery and indicated "notice of intent to sue – Scenic MT." *See* Application Supplement, CUL 00068. The supplement entry identified Powell as the relevant physician, listed Scenic MT in Big Springs, Texas as the place where the injury occurred, and noted that the injuries were "OBG" related. *Id*. It is clear that in the November 25, 2002 supplement, Encore first gave "notice in writing delivered to the Underwriter" of Moreno's notice of intent to sue.

The Declarations page, the insuring clause, and Exclusion 12(ii) require that the claim – defined for purposes of this case as written notice [notice in writing delivered to the Underwriter] of intent to file a lawsuit – be first made subsequent to the retroactive date and reported during the Policy Period. The retroactive date is October

---

[4]  (...continued)
insured and must, to the extent reasonably obtainable, include the time, date, place and circumstances of the loss event. The written notice must also include the name of the claimant, the type of medical services rendered, and the alleged injury. To the extent reasonably obtainable, the written notice must also include the names and addresses of the complainant and any potential witnesses. *See* Policy, Section VII.B.A., CUL00010.

24, 2000. *See* Lloyds Policy, CUL 00003. The Policy Period is from 12:01 a.m. on November 25, 2002 to 12:01 a.m. on November 25, 2003. *Id.* Because the Application Supplement, and the written notice of Moreno's intent to file a lawsuit included therein, was given to Lloyds on November 25, 2002 after 12:01 a.m., it was given during the Policy Period.[5] Because of the definitions in the Lloyds policy and because Lloyds established November 25, 2002 as the beginning of the Policy Period, Encore first gave written notice of Moreno's claim in this case during the Policy Period and there is coverage under the Lloyds policy.

Lloyds argues that Encore's disclosure in the Application Supplement of Moreno's intent to file a lawsuit was ineffective because it was not made under an existing policy. Initially, the Court notes that Lloyds cites no legal authority for this argument and this Court's independent research has revealed none. Moreover, the Lloyds policy does not require that the written notice be given "under an existing policy" but instead requires that the written notice be given "during the Policy Period." For reasons explained above, Encore complied with this requirement.

Lloyds also argues that a ruling that there is coverage in this case under the Lloyds policy would enable prospective insureds to benefit from making disclosures

---

[5] The Application Supplement was sent via an email to the Lloyds agent on November 25, 2002 at 1:19 p.m. *See* CUL00074.

in their applications for insurance. This can happen, however, only where the insurer agrees to make the Policy Period begin prior to the time it received the application disclosure. Lloyds was in the best position to avoid the strange result in this case. Lloyds could have specifically excluded coverage for the Moreno situation disclosed in the application or, indeed, could have simply excluded coverage for all claims listed in the application. Lloyds could have avoided coverage for the Moreno claim by making the Policy Period begin *after* the date it received the application disclosure. The fact that Lloyds may not have foreseen coverage for the Moreno claim under the 2002-2003 Lloyds policy is not a basis for denying coverage when the clear language of the policy provides coverage.

The clear, unambiguous language of the Lloyds policy and the various terms defined therein establish that Encore first made its claim in connection with the Moreno situation during the Policy Period. As a result, there is coverage under the Lloyds policy with the 2002-2003 policy period.

### C.   Other Issues

In this case, the issue of indemnity under the Lloyds policy is complicated by the decision of Encore and Powell to permit default judgments to be taken against them in an amount approaching $3,000,000.00. Such inaction on the part of an insured may negate an insurer's obligation to indemnify the insured for the default judgment. *See,*

*e.g., Ace Prop. & Cas. Ins. Co. v. Dorismond*, 88 Fed. Appx. 695 (5th Cir. Feb. 11, 2004). As a result, Defendants' request for summary judgment against Lloyds on the indemnity issue is denied. The parties have not adequately briefed this issue and the Court is not persuaded there are not fact questions on this point.

### IV.   <u>CONCLUSION AND ORDER</u>

Powell received and sent to Potter-Holden notice of a potential claim covered by the Evanston policy, but Potter-Holden failed to forward that notice to Evanston during the policy period. As a result, there is no coverage under the Evanston policy.

Under the unambiguous terms and definitions of the 2002-03 Lloyds policy, when applied together with Lloyds' decision to define the Policy Period as beginning at 12:01 a.m. on November 25, 2002, Encore first submitted to Lloyds the written notice of the Moreno situation during the Policy Period. As a result, the 2002-03 Lloyds policy provides coverage for Moreno's claims against Encore and Powell. It remains to be determined, however, whether Lloyds should be required to indemnify Encore and Powell for any, some, or all of the default judgments that Moreno obtained against them. Accordingly, it is hereby

**ORDERED** that the Motion for Summary Judgment filed by Defendants Encore Medical Staffing, Inc., William Powell II, Sylvia Moreno, and Adam Herrera and Third-Party Defendant Potter-Holden & Company [Doc. # 71] is **DENIED**; the Motion

for Summary Judgment filed by Plaintiff Evanston Insurance Company [Doc. # 73] is **GRANTED**, and the Motion for Summary Judgment filed by Certain Underwriters at Lloyds, London and National Fire and Marine Insurance Company [Doc. # 75] is **DENIED**.  It is further

**ORDERED** that the remaining parties shall file by **October 28, 2005**, briefing regarding the application in this case of the legal principles set forth *inter alia* in *Ace Property & Casualty Ins. Co. v. Dorismond*, 88 Fed. Appx. 695 (5th Cir. Feb. 11, 2004), and the impact of those principles on how this case should proceed.  It is further

**ORDERED** that the docket call on October 28, 2005 is **CANCELLED** and will be rescheduled by future order of the Court.

SIGNED at Houston, Texas, this **12th** day of **October, 2005.**

_____
Nancy F. Atlas
United States District Judge